**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GAYLA SCHNITZER and VALETTA MCENTYRE, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>ALBANY MED HEALTH SYSTEM,<br><br>Defendant. | Case No: 1:26-cv-1357 (BKS/PJE)<br><br>CLASS ACTION<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs GAYLA SCHNITZER and VALETTA MCENTYRE, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, bring this Complaint against Defendant ALBANY MED HEALTH SYSTEM ("Albany Med"), and allege the following upon their own knowledge, or where they lack personal knowledge, upon information and belief, including the investigation of their counsel.

**INTRODUCTION**

1. Albany Med is a private, nonprofit health system. Through its website, AlbanyMed.org (the "Website"), users can search for doctors, browse medical conditions and treatments, and schedule appointments, thereby communicating to Albany Med protected health information ("PHI"). Unbeknownst to those users, however—and constituting a significant violation of their privacy—Albany Med, without patient consent, allows third parties, including Google, to intercept, read, and utilize for commercial gain patients' personally identifying information ("PII") and PHI gleaned from their use of the Website.

2. Plaintiffs, on behalf of themselves and all others similarly situated, bring this action to enjoin Albany Med from disclosing patients' PII and PHI to third parties without consent, to enjoin Albany Med

from embedding third-party tracking technology on the Website that intercepts and transmits such information without patients' knowledge, and to recover compensation for aggrieved Class Members.

## JURISDICTION & VENUE

3. The Court has original jurisdiction over this action under 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, specifically 18 U.S.C. § 2510 *et seq*. (the Electronic Communications Privacy Act ("ECPA")), and the Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy under Article III of the United States Constitution.

4. Alternatively, the Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and at least one member of the class of plaintiffs is a citizen of a State different from a Defendant.

5. The Court has personal jurisdiction over Albany Med because it has its principal place of business in New York. Further, Albany Med has purposely availed itself of the benefits and privileges of conducting business activities within New York, including by providing health services in New York to New York residents.

6. Venue is proper in this Northern District of New York pursuant to 28 U.S.C. § 1391(b) and (c), because Albany Med resides in (*i.e.*, is subject to personal jurisdiction in) this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

7. Plaintiff Gayla Schnitzer is a resident of Hudson, New York.

8. Plaintiff Valetta McEntyre is a resident of Troy, New York.

9. Defendant Albany Med Health System is a not-for-profit New York corporation with its principal place of business at 43 New Scotland Avenue, Albany, New York 12208. It is the largest and only regionally governed health system in northeastern New York and western New England, serving a 25-county

area, and comprising multiple affiliates including Albany Medical Center Hospital, Albany Medical College, Columbia Memorial Hospital, Columbia Regional Medical, Glens Falls Hospital, Glens Falls Medical, Saratoga Hospital, Health Partners of Saratoga, Saratoga Care, Saratoga Regional Medical, Visiting Nurse Association of Albany, and the Visiting Nurse Association of Albany Home Care Corporation. The business employs approximately 16,000 people and has an annual revenue of approximately $3 billion.

## FACTS

### I. PATIENTS USING THE WEBSITE COMMUNICATE PII & PHI

10. In connection with its health system, Albany Med owns and operates the website, the Website. By using the Website, patients can and frequently do communicate their PII and PHI to Albany Med.

11. When patients browse the Website to search for medical care services, including when clicking on links or using search queries in the website's built-in search function, they communicate private and extremely personal information to Albany Med. This includes, but is not limited to medical conditions, care preferences, and appointment schedules, all of which constitute PHI.

12. For example, the Website's home page includes a menu link to "Find a Doctor." Alternatively, visitors may select a "CHOOSE A DOCTOR" button on the home page. Either link brings them to the Website's "Find a Doctor" page (albanymed.org/find-a-doctor).

[continued]



13.    The Website's "Find a Doctor" page lists approximately 2,900 board-certified physicians in a wide variety of specialties. Patients looking for a doctor can search, among other ways, by name, specialty, location, or language spoken. The below screenshot illustrates this process. By searching for and selecting professionals through this page, patients communicate information about their medical conditions—their PHI—to Albany Med.

ALBANY MED
Health System
Find a Doctor
Our Locations
Care & Treatment
Patients & Visitors
About Us
Albany Medical College
Make a Gift
Patient Portal
Find a Doctor
Albany Med Health System's board-certified physicians include some of the most expert doctors in their field. Find the right physicians who meet your medical needs.
Browse providers...
A B C D E F G H I J K L M N O P Q R S T U V W X Y Z
Clear refinements
Specialties
g
Acid Reflux (GERD)
Adolescent Gynecology
Center of Excellence at Glens Falls Hospital
Diabetes, Gestational
Gallbladder Cancer
Gallbladder Conditions
Gallstones
Gastroenterology
Gastrointestinal Stromal Tumor
General Obstetric & Gynecologic Care
Locations
alb
Albany Med Gastroenterology
Albany Medical Center Cath Lab
Albany Medical Center Emergency Department
Albany Medical Center Obstetrics & Gynecology
Allergy, Asthma, and Immunology - Albany
Alzheimer's, Parkinson's and Movement Disorders - Albany
Bernard & Millie Duker Children's Hospital at Albany Medical Center
Cardiology - Albany
Critical Care Unit - Albany
Ear, Nose & Throat Albany Medical Center
Primary Care
Yes
No
Languages Spoken
spa
Spanish
Meghan Aabo, DO
PEDIATRICS
Pediatric Hospital Medicine, Children's Hospital & Pediatrics
View Profile
Ayman Abdelhamid, MD
PSYCHIATRY
Outpatient Psychiatry, Inpatient Psychiatry
View Profile
Sidrah Abid, MD
DEPARTMENT OF MEDICINE
Nephrology & Hypertension, Kidney Disorder
View Profile
Christa Abraham, MD, FACS
SURGERY
Breast Surgery, General Surgery
View Profile
Alexandra Abrams-Downey, MD
DEPARTMENT OF MEDICINE
HIV/AIDS, HIV Testing
View Profile

14.     As depicted below, by selecting the "Care & Treatment" menu from the Website's homepage, then selecting "View All Services," patients can also browse and select services by general or specific medical conditions (the Website/care-treatment), further revealing their PHI.





15.     The Website also features an "Our Locations" page, which allows users to browse or search for nearby medical facilities, transmitting their location, and thus PII, to Albany Med.



16.    If a patient selects a location, they have the option to "Get Directions," in which case they are referred out to Google Maps, where they input their current location (*i.e.*, their PII) to obtain directions to the medical facility.



## II.    THE WEBSITE PATIENTS HAVE A REASONABLE EXPECTATION OF PRIVACY

17.    When patients communicate their PHI to Albany Med, they reasonably believe Albany Med will maintain the confidentiality of that information, due to both the extremely sensitive and private nature of the information, and due to Albany Med's affirmative representations.

18.    When patients first navigate to the Website, they are presented with a small popup cookie banner that states, "We use cookies to give you the best experience and analyze website performance. By continuing to navigate our website, you agree to our privacy policy and terms of use." Patients may click the links to read the policies, click "Close" to close the cookie banner, or continue to navigate the website without interacting with the banner. Patients have no option to reject or manage cookies. Even for those few patients who read the policy, it does not disclose that Albany Med shares their PHI with any third parties.



19.     As shown above, this cookie banner does not disclose to users that Albany Med may share patients' medical information with third parties, nor that their medical information is being shared for the purposes of profiling and targeted advertising.

20.     The link in the cookie banner to "our privacy policy" brings users to Albany Med's Consumer Web Privacy Statement (https://www.albanymed.org/consumer-web-privacy-statement).

21.     That Statement says, "[t]he Albany Med Health System [the 'System'] . . . established this policy to demonstrate its commitment to your privacy," and further represents that "[y]our privacy is important to the System."

22.     The Statement further provides, "[t]o improve the quality of this website, we gather general information about the use of our site through the use of cookies. The anonymous usage data collected through cookies helps us analyze and improve the quality and efficiency of our website as well as ease your use of our site. Cookies you receive from the System's website do not contain any personally identifiable information and cannot identify or track you personally. We do not use cookies for advertising or other commercial purposes."

23. The Statement further provides that while "no one can give an absolute assurance that information intended to be maintained as private, whether transmitted via the Internet or otherwise, cannot be accessed inappropriately or unlawfully by third parties," Albany Med has "taken and will continue to take commercially reasonable steps in compliance with state and federal laws to ensure the security of your personal information."

24. Finally, the Statement provides that "[o]ur contractors are legally bound to protect your information and responsible for instituting security measures to protect your information in compliance with industry standards and state and federal laws."

25. Reasonable patients thus read the Policy as disclosing only Albany Med's use of cookies for the limited purpose of improving users' experience and not for disclosure to and use by third parties.

## III. GOOGLE ANALYTICS COOKIES ON THE WEBSITE ALLOW GOOGLE TO TRACK, COLLECT, AND PROFIT FROM PATIENTS' PII AND PHI

26. Contrary to these assurances, the process by which Albany Med allows patients' data to be tracked and shared with Google violates patients' reasonable expectation of privacy.

27. When users visit the Website, Google-developed trackers embedded within the Website activate and immediately begin collecting data about the users' activity. These cookies[1] collect unique identifiers and other data, including browsing patterns, interests, and users' interactions with specific pages such as "Find a Doctor" and "Care & Treatment." This data is then transmitted to Google in real time, and Google uses it to build detailed user profiles for analytics, targeted advertising, and other marketing purposes. Since Google's trackers are used across multiple websites, data from different sites is aggregated to enhance

[1] Cookies refers to "HTTP cookies" or "internet cookies," which are built to help web browsers (like Chrome, Edge, Safari, etc.) track, personalize and save information about a user's browsing session. A web server that stores the website's data sends a short stream of identifying information to the user's web browser, then identifying data is processed and read by "name-value" pairs. These pairs tell the cookies where to be sent and what data to recall.

the user's profile. And when a user browses any website using the same cookies, they continue to gather and share data, including PHI and PII.

28.    Google Analytics is a web analytics service that, among other things, allows website owners to track visitors' actions via cookies. Google Analytics is free in that no money is exchanged between Albany Med on one hand and Google on the other for its use on the Website, though both parties nevertheless benefit. Albany Med uses the insights gained from the trackers to optimize content, deliver targeted ads, and generate site traffic, all of which increase revenues.

29.    Google Analytics includes a "remarketing audiences" feature that enables user tracking for targeted advertising across the internet. This feature allows a website to build custom audiences based on how a user interacts with the site and then follow those users across the internet and target them with advertising on other sites using Google Ads and Display & Video 360. According to Google, site operators are supposed to inform visitors when data collected with this feature is used to connect this browsing data with someone's real-world identity.

30.    Google Analytics also includes unique identifiers that link the browsing data collected to an individual's various Google accounts (e.g., YouTube and Gmail). This allows Google to recognize returning users and track their behavior across different websites. Using embedded scripts in the website's code, every interaction on the Website is logged and transmitted to Google servers.

31.    In particular, Google Analytics uses cookies called "3PSID," "3PAPISID," and "3PSIDCC," among others, to identify users by linking their browsing activity to their Google Chrome or Gmail accounts when they are signed in. These cookies enable Google to create a comprehensive user profile by connecting web activity with authenticated Google accounts.

32.    Google Analytics also uses a cookie called "NID," which collects information from users even when they are not signed in, or have never signed in, to a Google account. This cookie enables tracking across all user states regardless of authentication status.

33.     The data gathered by these cookies is used to create user profiles based on individual interests, enabling Google to deliver targeted advertisements. These cookies constitute PII, as they are unique to each user and can be used to identify individuals.

34.     Albany Med also shares patients' IP addresses, also constituting PII, with Google.

35.     An IP address is a globally unique numerical identifier that guides or routes communications across the Internet. Often written as four sets of numbers separated by periods (e.g., 94.140.9.22), Internet Service Providers assign IP addresses to networking devices such as modems or routers.

36.     IP addresses function as the essential addressing system of the Internet. Just as a telephone number routes calls to the correct household, an IP address is necessary for routing Internet communications to the correct location. Importantly, IP addresses reveal the geographic location of Internet users. Free online "IP lookup" services use databases that map IP addresses to geographic areas, often providing information about the country, city, county, approximate coordinates, or even the Internet Service Provider associated with the address.

37.     The geolocation capability of IP addresses makes them extraordinarily valuable for digital advertising and tracking. IP addresses allow companies to target advertisements to users in specific geographic areas with over 95% accuracy, and to track user interactions across multiple websites, building detailed profiles of users' browsing habits tied to their location.

38.     For these reasons, Europe's General Data Protection Regulation classifies IP addresses as "personal data," recognizing that even data that has been de-identified or pseudonymized but can be used to re-identify personal data.

39.     When Google Analytics combines IP addresses with 3PSID, 3PAPISID, 3PSIDCC, or NID (discussed further below) cookies, and the sensitive health information intercepted from the Website, it creates a comprehensive digital profile that can identify specific individuals and their medical interests.

40. By having their IP addresses shared, Albany Med patients are at risk of having even more personal information revealed, such as linking the individual user to a household. Sharing patients' IP addresses thus increases the identifiability of the patient.

41. Google uses the information Albany Med discloses to identify specific patients, track their online activity, and monetize it in the form of targeted advertising. That is, the private and sensitive information that Albany Med discloses—including medical symptoms, conditions, and provider preferences—enables Google to produce targeted ads likely to be relevant to the individual patient, thereby increasing Google's profits in its ad-selling business.

42. This is especially true if a patient using the Website is logged into a Google account. Google Analytics includes a user login session cookie within the tracker's requests to Google's site, which makes any information a patient provides Albany Med personally identifiable because the cookie value can be associated by Google with the user's account identity.

43. A recent study, for example, found that Google links patients' visits to MyChart portals with user identities using these cookies, demonstrating that the data sent to Google is personally identifiable.[2] Google uses all of the information it collects through Google Analytics and integrates it with Google Ads, allowing Google to use and improve targeted advertising. By tracking user behavior across different websites, Google can improve its targeted advertising, leading to higher click-through rates and, ultimately, more ad revenue.

44. Even if users are not logged into their Google accounts, their PHI is still tracked, collected, and tied to a unique profile through Google's NID cookie. While these cookies may not allow Google to identify a user by name, the unique identifier tied to that user allows Google to track a user's preferences and activities across all of its services (and other websites). Thus, even if a user is not logged into their Google

[2] Huo, M., et al., *All Eyes On Me: Inside Third Party Trackers' Exfiltration of PHI from Healthcare Providers' Online Systems*, WPES '22: Proceedings of the 21st Workshop on Privacy in the Electronic Society, at 197-211 (Nov. 7, 2022).

account, Google can, and does, still track a user's browsing behavior, including, for example, in the case of someone browsing the Website, their PHI, for pecuniary gain in the form of targeted ads.

45. Albany Med also benefits from sharing patient PHI with Google. Google Analytics allows Albany Med to improve its marketing by permitting it to track the Website visitors when they visit other websites or open their email, at which time Albany Med can send direct, targeted ads related to information reflected in patients' PHI.

46. Google's policy on HIPAA and Google Analytics states that, "to protect user privacy, Google Analytics policies and terms mandate that no data be passed to Google that Google could recognize as personally identifiable information (PII), and no data you collect using Google Analytics may reveal any sensitive information about a user, or identify them."[3]

47. Google further instructs HIPAA-regulated entities that they "must refrain from exposing to Google any data that may be considered Protected Health Information (PHI)," that they "must not use Google Analytics in any way that implicates Google's access to, or collection of, PHI," and that they may use Google Analytics only on pages that are not HIPAA-covered.[4] Google further advises that unauthenticated pages related to the provision of healthcare services are more likely to be HIPAA-covered and that healthcare entities "should not set Google Analytics tags on HIPAA-covered pages."[5] Google additionally instructs healthcare entities to work with their legal teams to identify pages that do not relate to the provision of healthcare services so that their Google Analytics configuration does not result in the collection of PHI.

48. Despite these warnings and instructions, Albany Med deployed Google Analytics on webpages through which patients searched for physicians, researched medical conditions and treatments, selected specialties, identified healthcare providers, and otherwise sought healthcare services, thereby

[3] Analytics Help, HIPAA and Google Analytics (available at https://tinyurl.com/2eravyrt) (last visited June 10, 2026).

[4] *Id.*

[5] *Id.*

permitting Google Analytics to collect information that Google expressly instructed HIPAA-regulated entities not to expose to Google.

49. Thus, Albany Med's use of Google Analytics was contrary not only to its own privacy representations, but also to Google's instructions to HIPAA-regulated entities, like Albany Med, regarding the collection of PHI through Google Analytics.

50. Albany Med's use of Google Analytics was not incidental or accidental. Albany Med intentionally procured, facilitated, and caused the transmission of Plaintiffs' healthcare-related communications to Google, knowing that the communications contained information concerning Plaintiffs' medical conditions, treatment interests, healthcare providers, and healthcare needs.

51. Albany Med knowingly deployed Google Analytics and related tracking technologies on webpages through which users searched for physicians, selected medical specialties, sought treatment information, and initiated appointment scheduling. Albany Med knew that users of these webpages were communicating information concerning their medical conditions, treatment interests, healthcare providers, and healthcare needs.

52. Albany Med also knew that Google Analytics was configured to transmit information concerning users' interactions with those healthcare-related webpages to Google and that Google would receive, process, store, and utilize such information on Google's own systems. Indeed, that is the entire point of installing Google Analytics. Moreover, Albany Med maintained the tracking technologies on those webpages because the resulting data provided marketing, advertising, audience measurement, and user-behavior insights that Albany Med considered valuable.

## IV.   ALBANY MED DID NOT DISCLOSE ITS TRANSMISSION OF PATIENTS' PHI TO GOOGLE, AND PATIENTS DID NOT CONSENT TO THE DISCLOSURE

53. Google Analytics requires website operators using Google Analytics to disclose their use of Google Analytics and explain how Google Analytics collects and processes data. Nevertheless, nowhere on the Website, including in its Privacy Policy and Terms of Use, did Albany Med disclose that it had deployed

Google Analytics on the website, identify Google as a recipient of patients' information, or explain how Google Analytics collected, received, and processed patients' data.

54. Nor did Albany Med disclose that patients' interactions with the Website, including communications revealing their medical conditions, treatment interests, provider selections, and other health-related information, would be transmitted to Google. Albany Med never informed patients that Google, a third party unrelated to their medical care, would receive information concerning their communications with Albany Med.

55. Plaintiffs and other Class Members neither knew nor had reason to know that their PHI and PII would be transmitted to Google through Google Analytics. Accordingly, they did not consent to Albany Med's disclosure, or Google's collection of their information. To the contrary, Albany Med's affirmative representations concerning privacy, cookies, and the protection of patients' information reinforced Plaintiffs' reasonable belief that their health-related communications would remain private.

## V. BY ALLOWING GOOGLE'S UNDISCLOSED EAVESDROPPING, ALBANY MED VIOLATED ITS PRIVACY POLICY, HIPAA STANDARDS, INDUSTRY STANDARDS, AND PATIENTS' PRIVACY RIGHTS

56. Under federal law, a healthcare provider may not disclose personally identifiable, non-public medical information about a patient, a potential patient, or household member of a patient for marketing purposes without the patient's express written authorization.

57. Guidance from the United States Department of Health and Human Services ("HHS") instructs healthcare providers that patient status alone is protected by HIPAA.[6]

58. The Google Analytics cookies discussed herein track users, collect their data (including PHI), and transmit that information to Google in real time. Thus, Google is eavesdropping on the Website visitors.

[6] HIPAA, 42 U.S.C. § 1320; 45 C.F.R. §§ 164.502; 164.508(a)(3), 164.514(b)(2)(i).

59. In Guidance regarding Methods for De-identification of PHI in Accordance with the Health Insurance Portability and Accountability Act Privacy Rule, HHS instructs that "names, residential addresses, or phone numbers" are PHI when "listed with health condition, health care provision, or payment data, such as an indication that the individual was treated at a certain clinic . . . ."[7]

60. Albany Med allows Google's undisclosed eavesdropping, purposely sharing its patients' PII and PHI with Google in contravention of its promises to protect user privacy and makes minimal effort to safeguard user privacy through de-identification methods, in contravention of the guidance principles promulgated by HHS.

61. In its guidance for marketing, the HHS also instructs:

> The HIPAA Privacy Rule gives individuals important controls over whether and how their protected health information is used and disclosed for marketing purposes. With limited exceptions, the Rule requires an individual's written authorization before a use or disclosure of his or her protected health information can be made for marketing. . . . Simply put, a covered entity may not sell protected health information to a business associate or any other third party for that party's own purposes. Moreover, covered entities may not sell lists of patients to third parties without obtaining authorization from each person on the list.[8]

62. Medical providers' duty of confidentiality is a core tenet of the physician-patient and hospital-patient relationship. However, Albany Med did not disclose its tracking of patients' data for Google's commercial gain, nor did it obtain users' consent before doing so. Thus, Albany Med's conduct was and is in violation of the HIPAA Privacy Rule.

63. The American Medical Association's ("AMA") Code of Medical Ethics contains numerous rules protecting the privacy of patient data and communications online.

64. The AMA has also promulgated a list of principles that provide the framework for protecting patient privacy online. Many policies pertain to individual rights of patient-users online, including the right to "know exactly what data of theirs an entity is accessing, using, disclosing, and processing—and for what

---

[7] *See* www.hhs.gov/sites/default/files/ocr/privacy/hipaa/understanding/coveredentities/Deidentification/hh_deid_guidance.pdf.

[8] *See* https://www.hhs.gov/sites/default/files/ocr/privacy/hipaa/understanding/coveredentities/marketing.pdf.

purpose—at or before the point of collection."[9] Given that the Website users are not informed of this information in any capacity, Albany Med is acting in violation of AMA ethical standards.

65. Albany Med's disclosure, and Google's interception of the Website patients' PII and PHI exemplifies the utmost invasion of privacy and would be highly offensive to any reasonable person. These invasions of privacy are particularly offensive given that Google intentionally intercepts users' PHI for financial gain through better targeting of advertisements; and given that Albany Med allows these invasions of privacy for its own financial gain, through more and better targeted advertising, to increase sales.

## VI. PLAINTIFFS' USE OF THE WEBSITE

66. Since at least October 2018, Plaintiff Gayla Schnitzer has used the Website on her phone and, at times, her computer to make medical appointments and search for doctors. In doing so, Ms. Schnitzer has, among other things, searched for doctors to confirm they met two criteria, they were in-network and specialized in the care she was seeking. Ms. Schnitzer has made many appointments using the Website.

67. Since at least 2019, Plaintiff Valetta McEntyre has used the Website on her phone or tablet to search for doctors for herself and for her daughter, who, due to her condition, has a medical team consisting of about 15 doctors; and to make medical appointments for herself and her daughter. In doing so, Ms. McEntyre used the Website's search function, searching for specific doctors and conditions, and visited webpages for specific doctors and medical conditions. Ms. McEntyre has run more than 10 separate searches for specific doctors that she can remember.

68. Plaintiffs' use of the Website constitutes internet messages, reports, and communications between them, on one hand, and Albany Med on the other, which were transmitted and passed over a wire, line, or cable.

69. Plaintiff Gayla Schnitzer has a Google account, uses Google Chrome while on her computer, and uses both Safari and Google Chrome while on her phone.

---

[9] *See* https://www.ama-assn.org/system/files/2020-05/privacy-principles.pdf.

70.    Plaintiff Valetta McEntyre has a Google account, primarily used Google's Chrome browser on her phone to access the Website, and was typically logged into her Google account when browsing the Website.

71.    As a result, Plaintiffs' messages, reports, and communications on the Website were instantly available to Google. Everything Plaintiffs browsed or searched on the website was, without notice or permission, tracked and disclosed to Google instantly and automatically as it occurred.

72.    Google's interception of Plaintiffs' PHI and PII was apparent because, for example, shortly after using the Website, Plaintiff McEntyre received targeted advertisements concerning the medical conditions about which she was communicating with Albany Med.

73.    Each time Plaintiffs used the Website, Albany Med allowed Google to intercept, learn the contents of, and use for commercial gain Plaintiffs' messages, reports, and communications.

74.    Because Plaintiffs' messages, reports, and communications were intercepted simultaneously as they were being communicated, Google's interceptions occurred while the messages, reports, and communications were in transit.

75.    Google was never a party to the messages, reports or communications between Plaintiffs and Albany Med. Plaintiffs did not know that their messages, reports, or communications on the Website would be intercepted by Google.

76.    Plaintiffs did not know that their PHI combined with their individual identifiers would be shared, used, sold, or otherwise disclosed to Google.

77.    Plaintiffs did not consent to their messages, reports, or communications on the Website being shared with Google.

78.    When visiting the Website, Plaintiffs did not know what cookies were and were unaware they were being tracked. Plaintiffs did not have the ability to opt out of having their personal information on the Website shared with Google for commercial gain.

79. Plaintiffs reasonably believed their messages, reports, and communications on the Website, including the PHI contained therein, were private. Plaintiffs were aware of Albany Med's duty of confidentiality and reasonably expected that the private information they provided, including their PHI and PII, would remain private and would not be shared with third parties for commercial purposes unrelated to patient care.

80. Albany Med's procurement of unauthorized interception of Website user communications has caused actual harm to Plaintiffs and other Class Members.

81. Plaintiffs' and other Class Members' private and personal data, including their PHI, IP addresses, and digital identifiers, have a recognized monetary value in today's digital economy. A 2014 Federal Trade Commission report, for example, detailed the value of user data, particularly health information, finding that data brokers sell data in sensitive categories for a premium.[10] In 2022, the FTC brought a lawsuit against a data broker for selling location data regarding people who visit abortion clinics, valued at approximately $160 for a week's worth of data.[11]

82. For years, data harvesting has been one of the fastest growing industries in the United States. Conservative estimates suggest Internet companies earn hundreds of dollars per American user through the interception and use of personal data.

83. The value of health data in particular is well-known and has been reported on extensively in the news. A 2017 article by Time Magazine titled "How Your Medical Data Fuels a Hidden Multi-Billion Dollar Industry," for example, described the extensive market for health data and noted that the market for information was both lucrative and a significant risk to privacy.[12]

[10] "Data Brokers: A Call for Transparency and Accountability," Fed. Trade Comm'n (May 2014).

[11] *Fed. Trade Comm'n v. Kochava Inc.*, No. 2:22-cv-377 (D. Idaho, filed Aug. 29, 2022).

[12] Adam Tanner, "Our Bodies, Our Data: How Companies Make Billions Selling Our Medical Records," *Time.com* (Jan. 9, 2017), *at* https://time.com/4588104/medical-data-industry.

84.    Due to the difficulty in obtaining health information, illegal markets also exist for such personal and sensitive information. NPR reported that health data can be "more expensive than stolen credit card numbers."[13]

85.    Albany Med's disclosures of Plaintiffs' and other Class Members' PII and PHI have deprived them of the economic value of their personal property without proper consideration, and has resulted in Albany Med being unjustly enriched at the expense of Plaintiffs and other Class Members.

86.    Moreover, medical and health-related information is highly private, and its interception can result in significant embarrassment, stigma, and even discrimination. Plaintiffs and other Class Members have suffered an invasion of their privacy through the unauthorized interception of their electronic communications and healthcare-related activities. These communications included searches for medical specialists, searches for treatments, and inquiries about medical conditions. The interception of these communications violated Plaintiffs' and other Class Members' reasonable expectation that their interactions with a healthcare provider would remain private.

87.    Albany Med's conduct has also undermined patient trust generally and created a chilling effect on digital healthcare communications. Plaintiffs and other Class Members can no longer confidently use the Website to seek medical information, locate healthcare providers, research treatments, or manage their healthcare without fear that their activities are being intercepted by third parties. This chilling effect may lead to reluctance to seek needed healthcare information or services online, potentially even impacting health outcomes.

88.    Once intercepted by Google Analytics, Plaintiffs' and other Class Members' data is beyond their control. This creates an ongoing risk that their sensitive health-related information may be further

---

[13] Aarti Shahani, "The Black Market For Stolen Health Care Data," *NPR.org* (Feb. 13, 2015), *at* https://www.npr.org/sections/alltechconsidered/2015/02/13/385901377/the-black-market-for-stolen-health-care-data.

processed, combined with other data sources, or potentially used by additional third parties, causing continued and future harm.

**CLASS ACTION ALLEGATIONS**

89. While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to represent a class of all persons in the United States who, at any time from three years preceding the date of the filing of this Complaint to the time a class is notified (the "Class Period"), interacted with the Website in a manner revealing their PII or PHI while the website was embedded with Google Analytics cookies (the "Class").

90. The Members in the proposed Class are so numerous that individual joinder of all Members is impracticable, and the disposition of the claims of the Class in a single action will provide substantial benefits to the parties and Court.

91. Questions of law and fact common to Plaintiffs and other Class Members include but are not limited to:

a. Whether the Website, through embedded trackers and cookies, collected PII or PHI;

b. Whether Albany Med disclosed to Google the PII or PHI of Class Members, or messages, reports, and communications between itself and Class Members;

c. Whether Albany Med procured Google to intercept Class Members' electronic communications on the Website;

d. Whether Google intentionally intercepted Class Members' electronic communications as a result of Albany Med's procurement;

e. Whether the interception, disclosure, use, sharing, and sale of Class Members' sensitive personal data for targeted advertising is unconscionable to a reasonable person;

f. Whether Albany Med owed Plaintiffs and other Class Members a duty of care; and

g. Whether Albany Med was unjustly enriched.

92. These and other common questions of law and fact predominate over questions that affect only individual Class Members.

93. Plaintiffs' claims are typical of the Class's claims because they are based on the same underlying facts, events, and circumstances relating to Albany Med's conduct. Specifically, all Class Members, including Plaintiffs, were subjected to the same violation of privacy and other unlawful and unfair business practices as a result of using the Website embedded with Google Analytics cookies.

94. Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action litigation, who will vigorously prosecute this action and otherwise protect and fairly and adequately represent Plaintiffs and the Class.

95. Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for each Class Member to redress the wrongs done to them.

96. Albany Med has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

97. As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq*.

98. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

99. ECPA provides a private right of action to "any person whose . . . electronic communications are intercepted, disclosed, or intentionally used in violation of" the Act. 18 U.S.C. § 2520(a). The Act prohibits both (a) intentionally intercepting, disclosing, or procuring another person to intercept any

electronic communication, and (b) intentionally disclosing the contents of any electronic communication knowing that the information was obtained through unlawful interception. 18 U.S.C. § 2511(1)(a), (c).

100.    Under the Act, "intercept" means the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

101.    "Contents" includes "any information concerning the substance, purport, or meaning of [a] communication." *Id.* § 2510(8). The intercepted data includes patients' searches for specific medical specialties, conditions, and providers, which communicate the substance and meaning of patients' healthcare needs and therefore constitute "contents" within the meaning of 18 U.S.C. § 2510(8).

102.    "Electronic communication" means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." *Id.* § 2510(12).

103.    Conduct is intentional when it, or the results thereof, are the person's conscious objective. *In re HIPAA Subpoena*, 961 F.3d 59 (1st Cir. 2020).

104.    The transmissions by Plaintiffs and other Class Members of their PII and PHI to the Website were "electronic communications" within the meaning of 18 U.S.C. § 2510(12). The following constitute "devices" within the meaning of § 2510(5): Plaintiffs' and other Class Members' browsers and computing devices; Albany Med's web-servers and website, the Website; and the Google Analytics tracking code designed by Google and deployed by Albany Med to effectuate the sending and acquisition of patient communications.

105.    Albany Med violated ECPA in two independent and overlapping ways.

106.    First, Albany Med disclosed the contents of Plaintiffs' and other Class Members' electronic communications to Google. Albany Med operates as a covered healthcare provider under HIPAA, and the information patients input on the "Find a Doctor" page, including symptoms, conditions, provider preferences, and appointment scheduling information, is collected directly by Albany Med in the context of its patients seeking care. Google Analytics cookies (3PSID, 3PAPISID, 3PSIDCC, and NID), and their

associated scripts, embed a persistent unique identifier in each visitor's browser and transmit it to Google along with the user's IP address and page-level data. When these unique identifiers travel in the same payload as the symptoms, conditions, and specialty preferences a patient enters on the "Find a Doctor" page, the combined dataset constitutes PII and PHI, because the identifiers can be used by Google to single out the individual whose health data is implicated. Albany Med's transmission of that data to Google therefore constitutes both a "disclosure" under ECPA and a disclosure of PHI under HIPAA. *See* 45 C.F.R. §§ 160.103, 164.502(a), 164.514(b)(2).

107.    Second, Albany Med procured Google to intercept those same communications. Albany Med made the affirmative decision to implement Google Analytics on its website, deliberately copying Google's tracking code into the Website's source code. Albany Med controls which pages contain the tracking code, could exclude it from sensitive pages where healthcare information is accessed, and could remove or modify it at any time, but has chosen not to do so. Albany Med's continued deployment of Google Analytics across the sensitive areas of its website represents an ongoing, deliberate choice to procure Google to intercept the electronic communications of its patients, in violation of 18 U.S.C. § 2511(1)(a).

108.    The one-party consent exception of 18 U.S.C. § 2511(2)(d) does not apply. Albany Med's disclosure of individually identifiable health information to Google violates HIPAA's criminal provision, which prohibits knowingly disclosing individually identifiable health information in violation of HIPAA's Administrative Simplification provisions. 42 U.S.C. § 1320d-6(a)(3). Because Albany Med's consent was given for the purpose of enabling Google to acquire, process, and commercially exploit patients' individually identifiable health information and confidential healthcare-related communications through means prohibited by HIPAA and other privacy laws, the criminal-or-tortious-purpose exception applies.

109.    Plaintiffs and other Class Members did not consent to Albany Med's disclosure of, or Google's interception of, their private communications, nor could they have, as they were unaware these interceptions occurred concurrently with their use of the Website.

110. Plaintiffs and other Class Members suffered harm as a result of Albany Med's violations of the Act, and seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the greater of actual damages and Albany Med's profits from its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), (c) punitive damages, and (d) reasonable costs and attorneys' fees.

**SECOND CAUSE OF ACTION**

**Violation of N.Y. Gen. Bus. L. § 349**

111. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if fully set forth herein.

112. Albany Med's conduct constitutes deceptive acts or practices in the conduct of business, trade, or commerce or in the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. § 349.

113. Albany Med provides paid healthcare services to New York consumers. During the Class Period, Albany Med carried out a plan, scheme, and course of conduct that was consumer-oriented and directed at the public at large, including Plaintiffs and other Class Members who used the Website to search for doctors and schedule medical appointments.

114. Albany Med engaged in, and continues to engage in, materially deceptive acts, practices, and omissions likely to mislead a reasonable consumer. A reasonable consumer reading Albany Med's privacy policy would understand it to mean that their browsing activity on the Website, including searches for doctors by specialty and condition, would not be shared with third parties for commercial purposes, would not be used to identify them personally, and would not be transmitted to outside parties for advertising. That understanding is false. In particular, Albany Med affirmatively misrepresented that:

- "The only information the System obtains about individual visitors to this website is information supplied voluntarily by the visitor," when in fact Albany Med was simultaneously transmitting patients' browsing activity, including their health-related searches, to Google;

- Albany Med "will not collect any identifying or personal information about you unless you deliberately submit such information," when in fact Albany Med's embedded Google Analytics code automatically and invisibly collected and transmitted identifying information, including unique cookie identifiers and IP addresses, without any deliberate submission by users;

- "Cookies you receive from the System's website do not contain any personally identifiable information and cannot identify or track you personally," when in fact the cookies transmitted by the Website, in combination with users' IP addresses and browsing data, allowed Google to identify individual users and link their health-related activity to their Google accounts; and

- Albany Med "do[es] not use cookies for advertising or other commercial purposes," when in fact Albany Med used Google Analytics cookies precisely for advertising purposes, including to enable targeted advertising and to optimize its own marketing efforts.

115.    Albany Med further deceptively omitted that it had embedded Google Analytics on the Website, that Google Analytics would intercept and transmit users' PII and PHI to Google in real time, and that this data would be used for commercial advertising purposes—material facts that Albany Med was obligated to disclose given the affirmative representations it made to the contrary.

116.    These misrepresentations and omissions were material. Reasonable consumers would not have used the Website to search for medical providers and conditions, or would have taken steps to prevent tracking, had they known their health-related browsing activity was being intercepted and transmitted to Google for commercial advertising purposes.

117.    Plaintiffs were injured as a direct and proximate result of Albany Med's deceptive conduct. In reliance on Albany Med's omissions, Plaintiffs used the Website to search for doctors and schedule medical appointments, sharing sensitive health information in the process. Had Albany Med disclosed the truth, that it was transmitting patients' health-related browsing data to Google for commercial gain, Plaintiffs would not have used the Website in the same manner, or at all.

118. Moreover, Plaintiffs paid for healthcare services from Albany Med, and would not have been willing to pay the same amount, or to use Albany Med's services at all, had they known Albany Med's privacy representations were false.

119. The injuries to Plaintiffs and other Class Members were foreseeable to Albany Med, and Albany Med's conduct was unconscionable and unreasonable.

120. Albany Med is liable for damages sustained by Plaintiffs and the Class to the maximum extent allowable under N.Y. Gen. Bus. L. § 349, including actual damages or $50 per violation, whichever is greater, plus attorneys' fees.

## THIRD CAUSE OF ACTION

### Negligence

121. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

122. Albany Med owed Plaintiffs and other Class Members a duty of care, to protect their PHI and PII from unauthorized disclosure. This duty arises from multiple independent sources.

123. First, Albany Med's duty arises from the special relationship between a healthcare provider and its patients. The physician-patient relationship imposes a duty of confidentiality that is among the most fundamental obligations in medicine, recognized at common law, codified in HIPAA and its implementing regulations, and reflected in the ethical standards of the American Medical Association. This duty exists independently of any contract between the parties and requires Albany Med to take reasonable steps to prevent the unauthorized disclosure of patients' health information to third parties.

124. Second, Albany Med's duty arises from its voluntary assumption of responsibility. By publishing a privacy policy representing that it would protect users' personal information and not share it with third parties for commercial purposes, Albany Med voluntarily undertook a duty of care to users who relied on those representations in deciding to share their health information through the Website.

125. Third, Albany Med's duty arises from the foreseeable risk of harm. Albany Med knew or should have known that embedding third-party tracking technology on a healthcare website would result in the transmission of patients' sensitive health information to outside parties, and that such a disclosure could cause significant harm to patients, including invasion of their privacy, loss of control over their sensitive medical information, and the chilling of their willingness to seek healthcare.

126. Albany Med breached these duties by embedding Google Analytics on the Website, thereby causing the automatic and invisible transmission of Plaintiffs' and other Class Members' PII and PHI to Google in real time, without their knowledge or consent, and for commercial advertising purposes directly contrary to its representations.

127. Albany Med's breach reflects a reckless disregard for patients' privacy rights. Albany Med made specific, affirmative representations that its cookies did not contain personally identifiable information and were not used for commercial purposes, while simultaneously deploying tracking technology that did precisely that. Albany Med had complete control over its Website and could have excluded Google Analytics from sensitive pages or removed it entirely, but chose not to do so.

128. As a direct and proximate result of Albany Med's negligence, Plaintiffs and other Class Members have sustained actual damages, in a sum to be determined at trial, including the loss of the economic value of their personal health information, which was transmitted to and exploited by Google without their consent or compensation; invasion of their privacy and the attendant emotional distress, anxiety, and loss of trust arising from the disclosure of their sensitive medical information to a commercial third party; and a loss of the benefit of the bargain, as Plaintiffs paid for healthcare services from Albany Med in reliance on its representations that their health information would remain private.

129. As a direct and proximate result of Albany Med's negligence, Plaintiffs and other Class Members have sustained damages in a sum to be determined at trial, including compensatory damages for invasion of privacy, emotional distress, and loss of the value of their personal health information.

**FOURTH CAUSE OF ACTION**

**Unjust Enrichment**

130. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

131. Plaintiffs and other Class Members conferred economic benefits on Albany Med in the form of profits resulting from the use of the Class's PII and PHI to improve Albany Med's marketing efforts.

132. Albany Med's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiffs' and other Class Members' PII and PHI being obtained and used without their consent. Plaintiffs' and other Class Members have been injured because they have not been compensated for the benefits they conferred on Albany Med. Plaintiffs' and other Class Members' legal remedies are inadequate to address this injury.

133. It would be inequitable, unconscionable, and unjust for Albany Med to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

134. As a result, Plaintiffs and other Class Members are entitled to equitable relief including restitution and disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Albany Med as a result of its inequitable business practices.

**PRAYER FOR RELIEF**

135. Wherefore, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

a. An Order declaring this action to be a proper class action, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' undersigned counsel as Class Counsel;

b. An Order requiring Albany Med to bear the cost of Class Notice;

c. An Order requiring Albany Med to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

d. An Order requiring Albany Med to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful or unfair business act or practice;

e. An Order requiring Albany Med to pay statutory, compensatory, and punitive damages as permitted by law;

f. An Order enjoining Albany Med from disclosing the contents of private communications between users and the Website without the users' consent;

g. An Order enjoining Albany Med from embedding or deploying third-party tracking technology that intercepts patient communications without consent;

h. A judgment awarding any and all further equitable, injunctive, and declaratory relief as may be appropriate;

i. Pre- and post-judgment interest, as permitted by law;

j. An award of attorney fees and costs; and

k. Such further relief as the Court deems necessary, just, or proper.

**JURY DEMAND**

136. Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: July 10, 2026

/s/ ____________________

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE*
*mmonroe@fmfpc.com*
TREVOR FLYNN*
*tflynn@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiffs***

**pro hac vice applications forthcoming*